Good morning, your honors. Please the court, Diane Roth on behalf of the plaintiff and appellant. This case turns on whether the plaintiff at the time she was appointed to her position was eligible to be appointed as a regular employee. We've been before this court before and we returned to the trial court to develop evidence whether or not she was eligible at the time of her appointment and we did develop that evidence. The evidence was that to be on an eligible list, to be appointed to a regular position, one had to meet certain minimum requirements and pass a test, be certified as eligible for appointment to a regular position, which plaintiff was at the time that she was appointed. She actually took several tests after she was appointed to try to get full-time regular appointment. And the first year and a half that she was employed, she passed those tests and was actually interviewed for positions. Once we established that she was actually eligible for appointment for a regular position, the county came up with a new requirement, which was that she had to be actually selected for that position to be considered eligible. And the trial court adopted that position. That seems to be circuitous logic and bootstrapping. If we adopted that definition of eligible for appointment, there could never, for example, be a discrimination case. Because basically what the county is saying is that you're not qualified unless we actually select you for the job and hire you. This case, the governing law in this case is a very old case, McGillicuddy, which was decided in 1933. There have been several cases since McGillicuddy in which temporary employees were found not to have been re-employed. Regular employees based on length of service. But in all of those cases, the applicants or the employees that were the plaintiffs were not qualified for appointment to a regular position. Had a court deemed them to be regular employees, that would have been in violation of the law that established those positions at the time. And a case in point is the Villain case that the county cited, in which case the plaintiffs were on an eligible list. But in that situation, the city was required to appoint the people who were highest on the list. We don't have that situation here. In Riverside County, anyone who is on that list is eligible for appointment to a regular position. Which case was that that you were talking about, Villain? Villain, yes. That's the only California Supreme Court decision that involves us, right? Yes. But the Supreme Court also reiterated the standard in McGillicuddy, which was that if a position is not temporary in fact and not temporary under the law by which the position is not temporary, then it cannot be considered temporary simply because it's been called temporary. The problem here, I mean, in terms of this, is that your client worked all these years in this position that was obviously not a regular position in terms of, you know, her perception of it because she had no benefits, which is sort of extraordinary. But she worked for six years, apparently with no vacation time and no health benefits and no sick leave and so on. So she knew there was something that was not regular about the situation. And the ultimate question really is whether she thought nonetheless that she had just caused protection. That's really where we are. That's correct. Well, I'd like to respond to that in two ways. One is that at the same time, she was led to believe, and we submitted evidences to this fact, that her position was permanent, that unless she messed up in some way, she would continue to work there. She was given regular performance evaluations like permanent employees. Regular what? I'm sorry. Performance evaluations, like regular employees. She was told, your work over the past year has been wonderful. We look forward to working with you next year. And she was basically led to believe that as long as she continued to do her job and meet expectations, that she would have a job. But the other answer to that is that there is the rights that a permanent public employee has cannot be obtained by implication or implied contract. They're statutory. And under the applicable statutes, she was not a regular, I'm sorry, a temporary employee, no matter what they told her, no matter what they called the position. She could not legally be appointed to a temporary position for longer than six months without certain authorizations, for longer than a year without authorization by the Board of Supervisors. And these authorizations were never sought or attained. And only, I believe it was a one-year extension. She far exceeded any extension that was authorized by the statute. And furthermore, she was doing the ongoing work of the hospital department she was assigned to. She was initially brought in, she thought, to clean up some backlog, and this was all presented to the court. But that particular job ended with, or that duty ended within the first six months of her employment, and they kept her on doing the regular work of the department. Also, her position was filled before she got it. It was six years that she had it, and it was immediately filled when she vacated it. It was a continuous position in the department established by the ordinance. Presumably, they could have had a position that was just called an at-will position and was, they could have two kinds of positions. One would be a just cause position, and the other one would be an at-will position. And really, that's how, I mean, this county seemed to have been treated, the words regular and temporary, as if they meant civil service protected and non-civil service protected. That's true, but they did not. But the word temporary doesn't really mean that. It means something else in ordinary English. Well, in ordinary English and in the statute, in Section 6, they define temporary employment as employment that lasts no longer than 1,040 hours, which is six months of full-time employment. But there is case law saying that the fact that they ignore their own time limits doesn't turn somebody by itself into a permanent employee. That's true. But it was more than ignoring their own time limits in this case. And the time limits are substantive, not just procedural. They're part of the statutory definition of what a temporary employee is. In all of those cases, the employee could not be considered a regular permanent employee because they did not meet the qualifications. They weren't eligible to be appointed to those positions for one reason or another. Either they didn't pass a test or they didn't score high enough on the test, on the list, or there was no position, actual permanent position, created, or they were not doing the job of someone in a permanent position. But in this case, we have all of the factors that were present in McGill-Cuddy, in addition to the length of time on the job. And I would like to reserve some time for response. If the Court has no other questions. Thank you. Lockwood. Good morning. Chris Lockwood for the Court. I have just a few brief points, then I'll stop. I think the most important point to emphasize in this case is that the county authorized an ongoing temporary position. I'm sorry? The county authorized and actually authorized a set of ongoing temporary positions. This is not similar to McGill-Cuddy. Well, what does that mean? I mean, they only authorized them up to a certain time period with extensions, and this was well beyond that. I agree with that. And that's the only issue, I think, that complicates the case. But the starting point is the county does that to save money, right? Yes and no. The permanent employees have the right to be there except for termination for good cause. Having an additional set of temporary employment positions on top of that provides a cushion. Those are designed to be pretty short-term positions. This is really what we were talking about before. They could, I mean, I presume there would be nothing, maybe there's something in California law, but there's nothing in sort of natural law that would prevent them from having explicitly just cause-protected positions and at-will-protected positions, or positions in which there were benefits, positions in which there weren't benefits. But they didn't set it up that way. They set it up by having regular and so-called temporary employees, and the temporary employees have time limits. So therefore, when you get up and you say, well, they can have ongoing temporary positions, it doesn't appear from the regulations that they can't, from their own rules that they can. That isn't how they set it up. I think what's really going on here is politics and negotiations. And the county did, in fact, I think you look at all together, set it up as ongoing for cause and ongoing at-will positions. The trouble is there's a county union, and if you have I'm sorry. There's a county union for the permanent employees, and they have a pretty strong interest in not having a permanent class of And so they didn't Wherever it came from, the net result is that it says no temporary employee shall be permitted to work in the same capacity for more than 1,000 working hours, and then there are some exceptions which didn't apply here. And so your category, your representation as to what they actually did, for whatever reason they did it, is simply wrong. I think that is the reason why it was put in there. The question really, I think the case really turns it on, the question of what is the consequence if a lower-level employee fails either to notice that a temporary employee has worked beyond 1,000 hours or notices and does nothing about it. The Board of Supervisors, and only the Board of Supervisors, has the power to change a temporary position into a permanent position. So I think the real question in this case is whether an unnamed lower-level employee can overrule the Board of Supervisors and change the temporary employee position into a permanent position. Doesn't the California case law at least establish that what they call it is not the answer, and that between McGillicuddy and Villain, don't they establish that there are circumstances in which simply by being there, you can become a de facto permanent employee? The only case, I think, that supports the plaintiff's position is McGillicuddy. And I think the other one is Villain. And Villain to some degree, at least to the degree of saying that the fact that this is designated a temporary position isn't the answer. I agree with that. The label doesn't control by itself. It's the reality of how things work when you analyze it all. But I think the main difference between McGillicuddy, and all the subsequent cases distinguish it on the basis, is that McGillicuddy allowed two types of positions and only two types. You had a 60-day temporary position just for the duration of emergency, while they were filling with a permanent position, and permanent. One category and second category, nothing else. The county's ordinance, by contrast, have ongoing temporary positions, which are always temporary positions, and which never become an ongoing for-cause position. So the county's ordinances envision having a series of temporary employees in 12C temporary positions. And the only thing that happened here is... Where is that? I'm not quite sure I followed the Court's question. I'm aware in the ordinance. I'm reading on page, the only section that seems directly relevant is 12C temporary employees. Where does it make your point? Let me find that. Page 12. I'm not quite sure where the Court is. Page 12 of... The appendix was repaired. I didn't prepare this, but it has tabs, and I'm not sure where you are. So I'm not looking at the same page. All right. Well, where are you? Just tell me where in the ordinance it contemplates having ongoing temporary positions. Okay. If you look, I did mark this one. The ordinance is on here several places. There's several places. First of all, the deposition of Mr. Walquist states that the Board of Supervisors on an annual basis budgets for each department a specified number of permanent employees and then a specified number on top of that of temporary employees. If you look at... Okay. This is on tab 68, and within that is page 99. If you look at the top of the page there, it says the category is hospital temporary. Towards the very bottom of the page, which is bracketed, it says office assistant 2, which is the plaintiff's position, 16 temporary positions. If you go back... What is this list? This is a list of the employees allocated to departments. If you go back three pages... I know, but isn't the relevant thing not what was actually done, but what the ordinance provides for? This is part of the ordinance. It's an appendix to it. If you go back three pages to page 97, these are positions allocated to departments. If you look on page 98, the permanent positions allocated to the hospital as office assistant 2, which is the plaintiff's position, there were 61 permanent positions. On top of the 61 permanent positions is the additional 16 temporary positions listed on page 99. So the ordinance itself and this table expressly distinguishes between the 61 permanent and the additional 16 temporary. And the plaintiff repeatedly tried to transition from the temporary position to a permanent position. It's undisputed that though she tried, she never was successful in doing so. The county has a civil service system, which is the merit test and the competitive examination. And this lawsuit really is an attempt to bypass the merit system. It's undisputed that on a merit basis, she was never able to successfully compete for a permanent position. No dispute about that at all. And if she's allowed to succeed in this case, she has bypassed the entire system and become permanent, not ever. I have one additional question, which is, this case has been here before. Correct. Why do you understand the court to have decided in the first instance? I wasn't here for the argument, but I talked to the court. No, I'm asking what the court decided, not what you think. I mean, what is in the opinion, the memorandum disposition, what did it decide? This was a Rocket Docket Wilson case. I'm sorry, what? This was a Rocket Docket Wilson case. That was actually the main issue of the argument. Judge Wilson has his Rocket Docket, in which cases go extremely quickly, and he set a schedule which allowed no discovery whatsoever. And the case was remanded to allow discovery. But there are some legal – do you not read this opinion as saying that if she was qualified, she went? In other words, if there's law of the circuit here with regard to the kinds of – law of the case with regard to the kinds of arguments you have been making so far. I don't think so. We're going through that. And part of the reason why that issue comes up, I think, in the first opinion, is because Judge Wilson, in his first order, found that she wasn't qualified at all. Therefore, nothing else mattered. But as we've laid out the second time around, with the benefit of discovery and more declarations, and frankly, more time on our part too, qualification is a multilayered issue. First of all, you have the qualification to apply for the position. So she had that qualification, no question. Second, you have the qualification by passing the test. She only met that qualification sometimes. Then you have the third qualification of scoring high enough on the test to be considered for interview in the first place. She only met that a few times. And then the final, you have to compete on a merit basis to get the position. For the first time around, Judge Wilson has said that she didn't make it to the first step of the process, and therefore nothing else mattered. And the prior opinion wanted further discovery on whether she met that first step. That evidence is now in the record. But that's the first step. She then has to go through steps two, three, and four to get the position. And there's no dispute that she never met them all. And the fact that the plaintiff herself kept applying, I think, is probably the best evidence that she knew all the way along that she never was permanent, never did make the position. And that's all the evidence. Kennedy. Is that position permanent now? Well, there are still 61 ongoing permanent positions and an additional 16 temporary positions. The position the plaintiff held at the time of her employment remains temporary. And what is the union's position? I'm just curious. The reason that the ---- Well, you know, you see this happening all over. You see it happening at colleges and universities and where they're trying to get rid of tenured people and just hire people by the hour. If you look at the deposition ---- They save a lot of money, though. A few answers to that question. Number one, the deposition of Mr. Walquist does address some of the reasons behind the politics, as I mentioned with the union. The unions were the one who didn't want to have long-term temporary employees. And why is that? It's because people change their lives. She comes into the job. She's been there six years. She has devoted six years of her life to this position. She's worked hard at it. She presumably has changed her position in some ways with regard to other opportunities she may have had. And all of a sudden it's really kind of hard to figure out what happened here. All of a sudden one day they say, all right, you're gone. You've worked more than 1,000 hours. Well, she'd worked more than 1,000 hours every other year. There was ---- If you look also at the deposition of Mr. Walquist, basically the union was getting after the county to enforce this temporary limit. So it's more internal politics that caused the county finally to look at the records and see what happened. That's the reason why ---- Not because they didn't want ---- didn't think people like her should be permanent employees, but they didn't think people like her should be kept on for six years and not paid any benefits and not given any vacation. The dispute was not whether the position was temporary. It's whether people should be allowed to be long-term temporary positions for employees. And the remedy was you apply for the permanent position, which she did, but she never made it. Have I answered the Court's question? Yeah, but except for the receipt of benefits, was her hourly rate the same as the permanent position? No. Permanent employees are entitled to merit increases and step increases. Temporary employees have a set salary and hourly rate, and that's just it. They're not eligible for any kind of promotion because they're temporary. And as long as ---- it was set up that way. And she was aware of that. I think that's why she kept trying to get a permanent position. Anything else? So why would she just let go like that? Because the union was getting after the county to enforce its own internal rule about the 1,000 hours. The deposition of Mr. Walcott talks about that. Because if they enforced the rules, then they wouldn't have people who had, you know, sufficient work experience and training to really carry out the job properly. It's a factor. This is basically entry-level position. And so what they were seeking was really more permanent positions, the unions. Yeah. It's part of the negotiations between the county and the unions. They want ---- permanent employees are union employees. Temporary ones are not. So that's also part of the politics behind this. So it's negotiating back and forth. All life is politics, huh? Every place you go. What? Every place you go, the politics show up. Oh, yeah. They're all over. Yeah. Anything further? Thank you. Just briefly, I have a different take on why she was let go when she was. And this actually was part of the record the first time around on the first summary judgment motion. She came in at 8 o'clock one morning with a note from her doctor that she needed light duty. And at 2 o'clock that day, she was given her termination on the basis that she had worked over 1,000 hours that year. And that case was dismissed in the federal court, and it's now pending in the state court, that part of it. I would like to respond to two things. One, that some lower. What's the basis of the state court claim? That she was terminated in violation of the Fair Employment and Housing Act for disability or perceived disability. That was a pendant claim to this action. And after summary judgment was granted the first time on the federal claim, we stipulated to dismiss and file that one in the state court. The first thing I wanted to respond to is that a lower level employee didn't notice and slipped up. That should not be determined in this case. In fact, there were higher level employees who knew how long Ms. Jenkins had worked, because the director of personnel countersigned her leave papers under the Family and Medical Leave Act twice, in which case she had to certify that the employee had worked more than 1,250 hours in the last year. And that is part of the record on summary judgment. As well as the evaluations which went into the personnel department every year that said, you worked well over the last year, this is your one-year evaluation, this is your two-year evaluation, five-year evaluation, that kind of thing. Further, there is a dispute that she met whether or not she met all the steps to be eligible for regular employment. She did at the time that she was appointed. She had passed the test. She was on an eligible list. She had met all the requirements to be appointed to a regular position. The only step that she did not pass, which was that she was actually selected for a position. And that should not be, that cannot be said to be a requirement to determine whether or not someone is eligible for a position, whether or not you're actually selected. The issue in this case is a due process issue. Yes. Everybody's been assuming that that question turns on the California civil service laws, whether she's a temporary or permanent employee. Is that necessarily so? Is there some other possibility? In other words, is it, I mean, what you're really arguing is that she had a long-term, she had the impression fostered by the county that she had permanence of employment, whatever category she fit in. And is that relevant to the constitutional issue, that whether or not the county called, whether or not she was a permanent employee for purposes of civil service, she was being treated as someone who could only be discharged for cause? Well, we did argue that the first time around, and I think in the trial court, and I think the law, I have to concede the law is pretty clear that your rights and public employment are determined by statute, not by some implied agreement or anything of that nature. Although there also is an equal protection argument. We did not plead that in the original complaint. Well, I mean, so you argued sort of a due process fairness argument, huh? Yes. And so the Rocketeer said no, huh? Yes, he did. Okay. We won't let you settle on the record. Thank you. Okay. I would take up. Louis versus Schlitgen.
judges: Browning, Pregerson, Berzon